**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHENZHEN YIWEN TECH LIMITED<br><br>Plaintiff,<br><br>v.<br><br>XGIMI TECH CO., LTD., HONG KONG XGIMI INNOVATION TECHNOLOGY COMPANY LIMITED, SHENZHEN QINGLAI INNOVATION INTELLIGENT TECHNOLOGY CO., LTD., and KICKSTARTER, PBC,<br><br>Defendants. | Case No. 1:26-cv-5220<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shenzhen Yiwen Tech Limited ("Plaintiff" or "Even Realities"), by and through its attorneys, hereby brings this Complaint for patent infringement under 35 U.S.C. § 271 against Defendants, XGIMI Tech Co., Ltd., Hong Kong XGIMI Innovation Technology Company Limited, and Shenzhen Qinglai Innovation Intelligent Technology Co., Ltd. (collectively, "XGIMI"), and Kickstarter, PBC ("Kickstarter") (all collectively, "Defendants") and alleges the following:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff to remedy Defendants' wrongful making, using, importation, offering for sale, and sale in the United States (including in this District) of smart glasses that infringe U.S. Design Patent Nos. D1,140,996 and D1,140,997 (collectively, the "Asserted Patents").

2. As of the filing of this Complaint, Defendants have infringed and continue to infringe the Asserted Patents.

3. This is an action for patent infringement under the patent laws of the United States, title 35 of the United States Code, and for such other preliminary and continuing relief as the Court

deems just and proper, including injunctive and monetary relief, damages, lost profits, and other relief.

**PARTIES**

4. Plaintiff Shenzhen Yiwen Tech Limited is a corporation organized under the laws of China with its principal place of business located at Room 2603, West Tower, Lepu Building, No. 66 Xingke Road, Nanshan District, Shenzhen, China, 518000.

5. Upon information and belief, Defendant XGIMI Tech Co., Ltd. is a corporation organized and existing under the laws of China that is headquartered at Building 4, Area A, Tianfu Software Park, No. 1129 Century City Road, High-Tech Zone, Chengdu, Sichuan, 610000, China.

6. Upon information and belief, Defendant Hong Kong XGIMI Innovation Technology Company Limited is a business entity with registered office located at Room 03E, 15th Floor, Carnival Commercial Building, 18 Java Road, North Point, Hong Kong.

7. Upon information and belief, Defendant Shenzhen Qinglai Innovation Intelligent Technology Co., Ltd. is a corporation organized and existing under the laws of China with registered office located at Room 511, Building 1, Shenzhen Software Industry Base, Nos. 81, 83, & 85 Gaoxin South 10th Road, Binhai Community, Yuehai Subdistrict, Nanshan District, Shenzhen.

8. Upon information and belief, Defendant Shenzhen Qinglai Innovation Intelligent Technology Co., Ltd. is a subsidiary of XGIMI Tech Co., Ltd. Defendant Shenzhen Qinglai Innovation Intelligent Technology Co., Ltd. is also the registrant of the domain name: www.memo-mind.com/, and is the current owner of U.S. Trademark Serial No. 99529945 for the mark

"MemoMind."[1]

9. Upon information and belief, Defendant Kickstarter, PBC is a Delaware corporation headquartered in New York, at 58 Kent Street, Brooklyn, NY 11222.

10. Upon information and belief, XGIMI and Kickstarter are currently collaborating on an active campaign to promote, market, offer for sale, sell, and distribute smart glasses product under the name "MemoMind" (the "MemoMind Products"), and to share the revenues from sales of the MemoMind Products between them. For example, XGIMI and Kickstarter are using the Kickstarter platform with a campaign project titled "MemoMind One: The Most Natural AI Display Glasses!" available at URL: https://www.kickstarter.com/projects/1963472698/memomind-one-the-most-natural-ai-display-glasses to promote, market, offer for sale, sell, and distribute the MemoMind Products. The campaign is scheduled to close on August 27, 2026.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 1 *et seq*.

12. Upon information and belief, Defendants have substantial, continuous, and systematic contacts with this District.

13. This Court has general jurisdiction over Kickstarter because the company is headquartered in Brooklyn, New York, and upon information and belief, has promoted, marketed, offered for sale, sold, and distributed infringing goods or otherwise transacted business in the State

[1] USPTO, Trademark Serial No. 99529945 for "MEMOMIND", available at https://tmsearch.uspto.gov/search/search-results/99529945

of New York and this District. Upon information and belief, Kickstarter has committed acts of infringement in this judicial district in violation of 35 U.S.C. § 271. These acts have caused and continue to cause injury to Plaintiff, and Kickstarter derives or expects to derive substantial revenue within the judicial district from the sale of infringing products, and/or expects or should reasonably expect its actions to have consequences within the judicial district.

14. This Court also has personal jurisdiction over XGIMI because it has, directly or through intermediaries, committed acts within New York giving rise to this action and/or has established minimum contacts with New York such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

15. Upon information and belief, XGIMI has promoted, marketed, offered for sale, sold, imported, and/or distributed infringing smart glasses, or otherwise transacted business in the State of New York and this District, including but not limited to, through the campaign on Kickstarter platform: https://www.kickstarter.com/projects/1963472698/memomind-one-the-most-natural-ai-display-glasses. Through their coordinated campaign, XGIMI and Kickstarter have raised over $1.27 million USD from more than 2,670 backers who have committed to purchase the MemoMind Products that infringe the Asserted Patents. Upon information and belief, at least some of the backers are from New York, creating an additional basis of jurisdiction in this forum.

16. Upon information and belief, XGIMI has promoted, marketed, offered for sale, sold, and/or distributed the infringing smart glasses through its website for the MemoMind Products, www.memo-mind.com/, which is accessible to residents of the State of New York. Upon information and belief, XGIMI also debuted its MemoMind One AI Glasses in New York City on

April 16, 2026 at its official launch event held at 220 W 42nd Street, New York, NY 10036.[2] XGIMI also promoted the MemoMind Products through sponsored online content creators, including YouTuber creators who tested and used the MemoMind Products in New York.[3] Upon information and belief, XGIMI has committed acts of infringement in New York in violation of 35 U.S.C. § 271. These acts have caused and continue to cause injury to Plaintiff, and XGIMI derives or expects to derive substantial revenue from the sale of infringing products in New York, and/or expects or should reasonably expect its actions to have consequences in this New York.

17. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) as to Kickstarter because Kickstarter has a regular and established place of business in this District and a principal place of business in this District, and as, upon information and belief, Defendants have transacted business in this District and have committed acts of infringement in this District, and intends a future course of conduct that includes further acts of patent infringement in this District, entitling Plaintiff to relief in this District.

18. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) as to XGIMI pursuant to the alien-venue rule. XGIMI does not reside in the United States and thus venue lies in any judicial district where it is subject to the court's personal jurisdiction, including here in this judicial district. XGIMI also has committed infringing acts in this judicial district, and intends a future course of conduct that includes further acts of patent infringement in this District,

---

[2] *See e.g.,* MemoMind: MemoMind Launch Experience NYC, available at www.memo-mind.com/pages/launch-event?srsltid=AfmBOoqrp1_MkHA1i-4KTEVgViYx9iy06hAvfkcr2YHKVBtA7Kzvqwhu;
*see also,* BGR: MemoMind One Review: Are These The First Smart Glasses You'll Actually Want To Wear?, available at https://www.bgr.com/2205340/memomind-one-review/;
MemoMindLabs, available at https://x.com/memomindlabs/status/2044478471280222640?s=46 ("MemoMind: New York, 1 day to go - Presenting tomorrow AI glasses designed for the way you actually live").

[3] *See e.g.,* YouTube, The Smart Glasses Even Realities Should Be Worried About - MemoMind One, available at https://www.youtube.com/watch?v=Dy4t6Sr-rss.

entitling Plaintiff to relief in this District.

## THE PATENTS-IN-SUIT

19. On August 11, 2026, United States Design Patent No. D1,140,996 ("the '996 Patent") was duly and legally issued for a design entitled "Smart Glasses" by the United States Patent and Trademark Office. A true and correct copy of the '996 Patent is attached hereto as **Exhibit A**.

20. On August 11, 2026, United States Design Patent No. D1,140,997 ("the '997 Patent") was duly and legally issued for a design entitled "Smart Glasses" by the United States Patent and Trademark Office. A true and correct copy of the '997 Patent is attached hereto as **Exhibit B**.

21. Plaintiff is the sole owner of the entire right, title, and interest in and to the '996 Patent and the '997 Patent, including the right to sue and recover for any and all infringement thereof. And Plaintiff continues to hold that ownership interest in each Asserted Patent.

22. The products covered by the Asserted Patents are the result of substantial research, design, and development efforts and significant expenditure of time, money, and resources.

## FACTUAL BACKGROUND

23. Shenzhen Yiwen Technology Limited was founded in 2023 by former Apple engineers, and operates the consumer brand "Even Realities." Even Realities develops and sells smart glasses that beam information directly into the wearer's line of sight through a proprietary heads-up display — without capturing video, photos, or compromising bystander privacy. Even Realities has raised $150 million in a pre-Series B round led by Meituan and previous backer Tencent; the round valued the startup at $1 billion. Even Realities is the first company in the

category to sell more than 10,000 pairs.[4] Even Realities is recognized as a world leader in the market for display-focused smart glasses, including display-equipped AI glasses.[5] Its smart glasses are sold throughout the United States via evenrealities.com and other retailers. Even Realities's smart glasses have achieved significant recognition and commercial prominence in the U.S. market for smart glasses for its approach of foregoing cameras and focusing on audio and displays.[6] Even Realities's smart glasses have received numerous awards for their design and innovation. For example, Even Realities's product Even G1 won the 2025 Good Design Award, the Red Dot Award 2025, and the iF Design Award 2025.[7] Even Realities's product Even G2 won the iF Design Award 2026 and CES Innovation Awards 2026.[8] This is also reflected in Plaintiff's global market position, which holds a 9% global market share in the segment of waveguide-based AR glasses, positioning itself as the third-largest provider in this segment, directly behind the market leaders Meta and Rokid. The segment of waveguide-based AR glasses refers to the market

---

[4] TechCrunch: Smart glasses maker Even Realities hits $1B valuation with $150M funding led by Meituan, Tencent, Jul. 6, 2026, available at https://techcrunch.com/2026/07/06/smart-glasses-maker-even-realities-hits-1b-valuation-with-150m-funding-led-by-meituan-tencent/.

[5] Omdia: Global AI glasses shipments reach 8.7 million units with Mainland China emerging as the fastest-growing market, Mar. 5, 2026, available at https://omdia.tech.informa.com/pr/2026/mar/global-ai-glasses-shipments-reach-8point7-million-units-with-mainland-china-emerging-as-the-fastest-growing-market.

[6] *See e.g.*, Tom's Guide: I wore the Even Realities G2 smart glasses for a week, and it's the first pair of AR glasses I'd actually buy, Nov. 12, 2025, available at https://www.tomsguide.com/computing/smart-glasses/even-realities-g2-smart-glasses-review ("The Even Realities G2 smart glasses have kicked off a new category of wearable smart tech…").

[7] *See e.g.*, Even G1 2025 Good Design Award, available at https://www.g-mark.org/en/gallery/winners/28237?text=Even+Realities;
Even G1 reddot winner 2025, available at https://www.red-dot.org/project/even-g1-78294;
Even G1 IF DESIGN AWARD 2025, available at https://ifdesign.com/en/winner-ranking/project/even-realities-g1/680098.

[8] *See e.g.*, Even G2 IF DESIGN AWARD 2026, available at https://ifdesign.com/en/winner-ranking/project/even-realities-g2-series/757564;
CES Even Realities G2 Display Smart Glasses and R1 Companion Ring, available at https://www.ces.tech/ces-innovation-awards/2026/even-realities-g2-display-smart-glasses-and-r1-companion-ring/.

for augmented reality glasses in which digital images are transmitted into the user's field of view via specialized optical waveguide[9]:




24. Even Realities's smart glasses are available at over 25 retailers in the United States[10], including New York. The U.S. market is important for the company as "more than half of Even Realities's user base is located in the United States, while approximately 80% of its developer community is U.S.-based."[11]

25. Even Realities's position in the U.S. market did not come easy. Plaintiff invests substantial time and resources into the conception, industrial design, engineering, and testing of

[9] Counterpoint: Global XR (AR/VR) Model Shipments Tracker, Q1 2026, available at: https://counterpointresearch.com/en/insights/intelligent-eyewear-up-yoy-driven-by-demand-q1-2026. Cited by Computer Weekly: Intelligent eyewear market sees opportunities, https://www.computerweekly.com/news/366645176/Intelligent-eyewear-market-sees-opportunities; *See also,* Counterpoint: Global AR Smart Glasses Shipments Grow 148% YoY in H2 2025; Waveguide-based Devices Surge Over 600%, https://counterpointresearch.com/en/insights/Global-AR-Smart-Glasses-Shipments-Grow-148-Percent-YoY-in-H2-2025-Waveguide-based-Devices-Surge-Over-600-Percent ("Even Realities ranked third in the segment, capturing a 16% market share with its ultra-lightweight G1 and G2 series glasses, which feature a design resembling traditional prescription glasses.").

[10] Even Realities: Retail Stores, available at https://www.evenrealities.com/retail#map.

[11] CNBC: Apple veteran's Chinese smart-glasses firm becomes unicorn as Tencent, Meituan fund rival to Meta, Jul. 6, 2026, available at https://www.cnbc.com/2026/07/06/apple-veteran-takes-on-meta-with-1-billion-smart-glasses-maker.html.

its products to achieve these results.[12] Plaintiff attaches great importance to intellectual property protection and owns intellectual property rights worldwide. Plaintiff has obtained design and utility patents relating to smart glasses in the United States. In recognition of the novelty and non-obviousness of its work, the United States Patent Office has granted Even Realities several patents, including but not limited to the Asserted Patents. Plaintiff's intellectual property rights are among its most valuable assets.

26. In the wake of Even Realities's success, XGIMI seeks to offer smart glasses that blatantly copy Even Realities's designs and infringe its patent rights. The MemoMind smart glasses, including but not limited to MemoMind One Archive, Nomad, and Gotham models, infringe Plaintiff's U.S. patent rights and unfairly capitalize on the design, innovation, research, and development efforts that have contributed to Even Realities market position and reputation. Such conduct undermines fair competition and disregards the value of intellectual property protections intended to encourage and reward innovation. Consumers have commented on the remarkable similarity between the Even G2 and the MemoMind One and have questioned whether Even Realities and MemoMind are affiliated or otherwise connected. Comments posted in response to videos published by "MemoMind.official" and other online content creators likewise reflect consumer confusion concerning the relationship between Even Realities and MemoMind.[13]

---

[12] Even Realities YouTube: The Story of Even G1 - Display Smart Glasses by Even Realities, https://www.youtube.com/watch?v=tBH7mczkIJY.

[13] *See, e.g.*, MemoMind.official YouTube: MemoMind— First Look at CES, available at https://www.youtube.com/watch?v=6KAeolh1SBk;
MemoMind.official YouTube: MemoMind One Review | Everything You Need To Know, available at https://www.youtube.com/watch?v=aGvNDXV_brY&t=89s;
MemoMind.official YouTube: MemoMind AMA — with r/SmartGlasses Moderator Norman | Honest Take, Live Tests, Community Q&A, available at https://www.youtube.com/watch?v=UJ_1wtQd5B0&t=1374s;
*see also, e.g.*, YouTube: How do I look MemoMind AI Glasses 2026, available at https://www.youtube.com/shorts/TQ_g0f1Nbok;

Moreover, promotional video and webpages sponsored by XGIMI expressly compare MemoMind Products with Even Realities. These direct comparisons demonstrate that XGIMI knew of Even Realities and its designs prior to this suit[14] and upon information and belief, XGIMI deliberately copied those designs to trade on Even Realities's reputation and innovation. Exemplary consumer comments are reproduced below:







YouTube: MemoMind One AI Glasses REVIEW - The Worlds Smartest Glasses, available at https://www.youtube.com/watch?v=zxZnb39KPE0;
Reddit: MemoMind One - Audio + HUD Is The Sweet Spot, available at https://www.reddit.com/r/SmartGlasses/comments/1vih4se/comment/p2hs9m8/;
Reddit: I tested XGIMI's MemoMind One and they prove smart glasses don't need a camera to be good, https://www.reddit.com/r/augmentedreality/comments/1rol4w7/i_tested_xgimis_memomind_one_and_they_prove_smart/;
Reddit: Memomind AI Glasses Launched their Kickstarter this morning, available at https://www.reddit.com/r/augmentedreality/comments/1ui3o2k/memomind_ai_glasses_launched_their_kickstarter/;
Reddit: Will the G2 get KOed in 1st round when Memomind One steps into the ring in August '26?, https://www.reddit.com/r/EvenRealities/comments/1u89fwz/will_the_g2_get_koed_in_1st_round_when_memomind/;
Reddit: MemoMind One Glasses - Early hands on, available at https://www.reddit.com/r/SmartGlasses/comments/1tuk275/memomind_one_glasses_early_hands_on/.

[14] *See, e.g.*, https://www.memo-mind.com/blogs/buyers-guide/memomind-one-vs-even-realities-g2-reddit-review ("MemoMind One vs Even Realities G2 Review: Which AI Glasses Are Better?"); https://www.memo-mind.com/blogs/buyers-guide/how-to-choose-ai-glasses-that-fit-you ("MemoMind One vs Even G2: Which Camera-Free AI Glasses Fit Your Daily Routine?"); *see also*, https://www.youtube.com/watch?v=C14tnunGDcA ("Even Realities G2 vs MemoMind One | Which Smart Glasses Actually Win After 3 Weeks?"); https://www.youtube.com/watch?v=tOeBeW_RuMA ("Even G2 VS MemoMind One: Which Should You Buy?");

@justinejohnson7803 4 months ago
So which one is the ripoff ? This brand or Even G2. The similarities in design and UI are to uncanny to be coincidence.
1 Reply

**hemimehta** • 6mo ago
Are these basically the even realities g1?
3 Reply Award Share

@sbl_lbs 6 months ago
They arent even trying to pretend they aren't copying Even Realities. "Conversant"? Seriously?
21 Reply

@tiffanythomas1495 6 months ago
Do they answer your phone calls? These are being compared to the Even Realities g2. The Even Realities done answer calls or play music. So I hope the memo mind one does
Reply

@mrmoxie.1p 6 months ago
Without a camera it's just a copy of g2
Reply

@Jetter638 7 months ago
No glasses with a Camera??? It's a non starter for me. Also seems like you just copied ER's design.
21 Reply

I will say, these MemoMind Ones are basically the same as the Even Realities for the design of the frame... I'm sure there are some enterprising 3rd parties on AliExpress or eBay that are probably going to sprout up and cut custom lenses and add them to these glasses.




27. On or around June 28, 2026, XGIMI and Kickstarter launched a campaign and began promoting and offering for sale the MemoMind Products on Kickstarter's website and seeking customers as backers. Through the campaign, the backers could commit to purchasing the product if the campaign met a targeted goal or level of sales.

28. Upon information and belief, Kickstarter operates the website located at kickstarter.com. Kickstarter describes itself on its website as "a crowdfunding platform where creators raise funds directly from backers to bring their creative project to life," "a Public Benefit Corporation (PBC)," and "support[ive of] projects across art, comics, crafts, dance, design, fashion, film and video, food, games, journalism, music, photography, publishing, technology, and theater."[15] Kickstarter plays an active promotional and curatorial role through curation programs like "Projects We Love," built-in project page FAQ infrastructure, and integrated project's backer management.[16]

29. Kickstarter designated the MemoMind campaign as a "Project We Love," as reflected by the badge displayed on the campaign cover page and as in the screenshot below. At the time of this filing, XGIMI and Kickstarter have raised over $1.27 million USD from more than

---

[15] Kickstarter: What is Kickstarter?, available at https://help.kickstarter.com/hc/en-us/articles/115004996453-What-is-Kickstarter.

[16] Kickstarter: How can my project get featured, or selected as a Project We Love?, available at https://help.kickstarter.com/hc/en-us/articles/115005135214-How-can-my-project-get-featured-or-selected-as-a-Project-We-Love; What is my responsibility for answering questions from backers and non-backers?, available at https://help.kickstarter.com/hc/en-us/articles/115005135254-What-is-my-responsibility-for-answering-questions-from-backers-and-non-backers; How do I manage backer information?, available at https://help.kickstarter.com/hc/en-us/articles/115005139333-How-do-I-manage-backer-information.

2,670 backers who have committed to purchase the MemoMind Products that infringe Plaintiff's patents through the active Kickstarter campaign. If the campaign is successfully funded, Kickstarter and XGIMI will share the funds raised. According to Kickstarter's policy on the fees, "[i]f a project is successfully funded, Kickstarter collects a 5% fee from the funds collected for creators."[17]




30. Upon information and belief, Defendants are engaged in the business of importing, using, selling and/or offering to sell within the United States and/or importing into the United States the MemoMind smart glasses (hereafter, the "Accused Products"), including but not limited to the MemoMind One Archive, Nomad, and Gotham models, that are covered by one or more claims of each of the Asserted Patents.

31. According to the "MemoMind" trademark prosecution history and documents filed in the United States, Shenzhen Qinglai Innovative Intelligent Technology Co., Ltd. submitted

[17] Kickstarter, What are the fees?, available at https://help.kickstarter.com/hc/en-us/articles/115005028634-What-are-the-fees.

Statement of Use and Specimen to the United States Patent and Trademark Office, and stated that "[t]he mark was first used by the applicant, or the applicant's related company, licensee, or predecessor in interest at least as early as 01/06/2026, and first used in commerce at least as early as 01/06/2026, and is now in use in such commerce."[18]

32. On August 20, 2026, Plaintiff sent a cease-and-desist letter to Kickstarter via electronic mail notifying it about the above information and requesting that Kickstarter immediately cease and desist all marketing, sales, offer to sell of the Accused Products on Kickstarter's website, that it take down the shipping options to the United States for the MemoMind One campaign, that it remove or disable the Kickstarter project listing at www.kickstarter.com/projects/1963472698/memomind-one-the-most-natural-ai-display-glasses in its entirety and halt the MemoMind One campaign, and refrain from collecting, or distributing, any funds pledged or committed during the campaign, pending the resolution of the issues raised in the letter. Plaintiff also explained in its letter that if Kickstarter proceeded with the campaign, its actions would result in the sale and distribution of thousands of smart glasses that infringe Plaintiff's patents, damaging Plaintiff and causing Plaintiff irreparable harm.

33. Upon information and belief, consistent with Kickstarter's policy[19], Kickstarter notified XGIMI about the cease-and-desist letter and provided XGIMI a notification copy. Upon information and belief, Kickstarter and XGIMI have knowledge about the matters alleged in this complaint.

34. On August 20, 2026, Plaintiff also sent a cease-and-desist letter to XGIMI via

---

[18] USPTO TSDR Case Viewer for Trademark Serial No. 99529945 for "MEMOMIND", available at https://tsdr.uspto.gov/documentviewer?caseId=sn99529945&docId=SOU20260709211611#docIndex=0&page=1.

[19] *See e.g.*, Kickstarter, Terms of Use, Effective Date: Feb. 11, 2025, available at https://legal.kickstarter.com/policies/en/?name=terms-of-use.

electronic mail notifying it about the above information and requesting that XGIMI immediately cease and desist all manufacturing, marketing, importation, sales, offer to sell of the Accused Products, recall immediately any Accused Products that have been distributed, take down the shipping options to the United States for the MemoMind One campaign, that remove or disable the Kickstarter project listing at www.kickstarter.com/projects/1963472698/memomind-one-the-most-natural-ai-display-glasses in its entirety and halt the MemoMind One campaign, and refrain from collecting, distributing, or using any funds pledged or committed during the campaign, pending the resolution of the issues raised in the letter. Plaintiff also explained in its letter that if XGIMI proceeded with the campaign and promotion of the Accused Products, its actions would result in the sale and distribution of thousands of smart glasses that infringe Plaintiff's patents, damaging Plaintiff and causing Plaintiff irreparable harm.

35. Defendants' appropriation extends beyond the articles of manufacture themselves, to XGIMI deliberately imitating Even Realities's public-facing persona. As shown in the below exemplary figure, MemoMind has duplicated Even Realities's entire commercial presentation, including paired male-female editorial photography, earth-toned styling, and left-aligned branding against muted backdrops, compounding consumer confusion at every point of sale.[20] The breadth and deliberateness of this copying—encompassing product form, marketing composition, and trade dress in totality— is powerful evidence that XGIMI's infringement of Even Realities's design patents is knowing and willful.

[20] *See, e.g.*, https://thegadgetflow.com/blog/memomind-at-ces-2026/.

| Even Realities | MemoMind |
| --- | --- |
|  |  |

36. Due to Defendants' infringement and the impact of the Kickstarter campaign, Even Realities is losing potential consumers for its patented smart glasses. "MemoMind is not far from release. Very similar to G2… Hence returning mine and going for Memo."[21]

## CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Infringement of the '996 Patent)

37. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs, as if fully restated herein.

38. Upon information and belief, Defendants have been and are currently making, using, offering for sale, selling, and/or importing a product that infringes the claim of the '996 Patent. The Accused Products are being offered for sale and/or sold by Kickstarter on Kickstarter.com.

39. Even Realities's Even G1 A and Even G2 A Models practice the design of the '996 Patent.

[21] *See, e.g.*, Reddit: Should I wait or just go ahead and buy the Even G2 smart glasses with the R1 ring?, available at https://www.reddit.com/r/SmartGlasses/comments/1tz0mty/should_i_wait_or_just_go_ahead_and_buy_the_even/?solution=95f83c3a506a828f95f83c3a506a828f&js_challenge=1&token=7afd7253fec22262ff1c52b1703fe9eca48f3f9118b95a1502d66ba8202f9d5d&jsc_orig_r= .

**US D1,140,996**

**Even G1 A Model**









**US D1,140,996**

**Even G2 A Model**









40. The ornamental design of the Accused Products is substantially the same as the design claimed in the ’996 Patent, such that an ordinary observer, giving such attention as a purchaser usually gives, would be deceived into believing the Accused Products embody the patented design. The Accused Products are copies of Even Realities’s products. A side-by-side comparison of the Accused Products and the ’996 Patent is attached hereto as **Exhibit C**.

| **US D1,140,996** | **MemoMind Archive Model** |
|---|---|
|  |  |
|  |  |

41. Upon information and belief, Defendants have infringed the ’996 Patent by their manufacture, use, importation, offer for sale, and/or sale of products. Both Defendants XGIMI and Kickstarter are liable for their infringement of the ’996 Patent pursuant to 35 U.S.C. § 271.

| **Even G1 A Model** | **Even G2 A Model** | **MemoMind Archive Model** |
|---|---|---|
|  |  |  |
|  |  |  |

42. Upon information and belief, both Defendants have offered to sell and sold products in the United States and within the jurisdiction of the Court that directly infringe the ’996 Patent, which infringement is ongoing.

43. Upon information and belief, both Defendants, by their offers to sell and sales of products, have actively induced infringement of the ’996 Patent, which infringement is ongoing.

Defendants had knowledge of the ’996 Patent and knowingly induced others to infringe by promoting, marketing, and facilitating the sale of the Accused Products through the Kickstarter campaign.

44. A cease-and-desist letter of infringement of the ’996 Patent by Kickstarter was sent via electronic mail to Defendant Kickstarter on August 20, 2026, which shows Defendant Kickstarter at least had actual knowledge of the ’996 Patent and the infringement no later than August 20, 2026. The continued offers for sale and sales of the infringing products through the Kickstarter campaign demonstrate Defendant Kickstarter had actual knowledge of the ’996 Patent and intent to willfully infringe the claim of the ’996 Patent, by virtue of its agency, business and sales arrangement with XGIMI, as set forth in the allegations above.

45. A cease-and-desist letter of infringement of the ’996 Patent by XGIMI was sent via electronic mail to Defendant XGIMI on August 20, 2026, which shows Defendant XGIMI at least had actual knowledge of the ’996 Patent and the infringement no later than August 20, 2026. The continued offers for sale and sales of the infringing products, including through the Kickstarter campaign, demonstrate Defendant XGIMI had actual knowledge of the ’996 Patent and intent to willfully infringe the claim of the ’996 Patent, as set forth in the allegations above

46. Upon information and belief, Defendants contribute to the infringement of the ’996 Patent by offering to sell and selling within the United States the product which infringes the claim of the ’996 Patent, and the product is not a staple article or commodity of commerce suitable for substantial non-infringing use.

47. Upon information and belief, Defendants knowingly or with willful blindness induced and continue to induce infringement and possessed specific intent to encourage another’s infringement by, or were willfully blind as to the ’996 Patent and with respect to, their activities

described above.

48. The foregoing acts of patent infringement by the Defendants have caused, and unless enjoined by this Court, will continue to cause, immediate and irreparable injury and damage to the Plaintiff, and Plaintiff has no adequate remedy at law. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial.

**SECOND CLAIM FOR RELIEF**
**(Infringement of the '997 Patent)**

49. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs, as if fully restated herein.

50. Upon information and belief, Defendants have been and are currently making, using, offering for sale, selling, and/or importing a product that infringes the claim of the '997 Patent. The Accused Products are being offered for sale and/or sold by Kickstarter on Kickstarter.com.

51. Even Realities's Even G1 B and Even G2 B Models practice the design of the '997 Patent.

**US D1,140,997** **Even G1 B Model** **Even G2 B Model**



52. The ornamental design of the Accused Products is substantially the same as the

design claimed in the ’997 Patent, such that an ordinary observer, giving such attention as a purchaser usually gives, would be deceived into believing the Accused Products embody the patented design. The Accused Products are copies of Even Realities’s products. A side-by-side comparison of the Accused Products and the ’997 Patent is attached hereto as **Exhibit D**.

| **US D1,140,997** | **MemoMind Gotham Model** | **MemoMind Nomad Model** |
| --- | --- | --- |
|  |  |  |
|  |  |  |

53. Upon information and belief, Defendants have infringed the ’997 Patent by their manufacture, use, importation, offer for sale, and/or sale of products. Both Defendants XGIMI and Kickstarter are liable for their infringement of the ’997 Patent pursuant to 35 U.S.C. § 271.

| | | |
| --- | --- | --- |
| **Even G1 B Model** |  |  |
| **Even G2 B Model** |  |  |

| | | |
|---|---|---|
| **MemoMind**<br>**Gotham Model** |  |  |
| **MemoMind**<br>**Nomad Model** |  |  |

54. Upon information and belief, both Defendants have offered to sell and sold products in the United States and within the jurisdiction of the Court that directly infringe the ’997 Patent, which infringement is ongoing.

55. Upon information and belief, both Defendants, by their offers to sell and sales of products, have actively induced infringement of the ’997 Patent, which infringement is ongoing. Defendants had knowledge of the ’997 Patent and knowingly induced others to infringe by promoting, marketing, and facilitating the sale of the Accused Products through the Kickstarter campaign.

56. A cease-and-desist letter of infringement of the ’997 Patent by Kickstarter was sent via electronic mail to Defendant Kickstarter on August 20, 2026, which shows Defendant Kickstarter at least had actual knowledge of the ’997 Patent and the infringement no later than August 20, 2026. The continued offers for sale and sales of the infringing products through the Kickstarter campaign demonstrate Defendant Kickstarter had actual knowledge of the ’997 Patent and intent to willfully infringe the claim of the ’997 Patent, by virtue of its agency, business and sales arrangement with XGIMI, as set forth in the allegations above.

57. A cease-and-desist letter of infringement of the ’997 Patent by XGIMI was sent via electronic mail to Defendant XGIMI on August 20, 2026, which shows Defendant XGIMI at least had actual knowledge of the ’997 Patent and the infringement no later than August 20, 2026. The continued offers for sale and sales of the infringing products, including through the Kickstarter campaign, demonstrate Defendant XGIMI had actual knowledge of the ’996 Patent and intent to willfully infringe the claim of the ’996 Patent, as set forth in the allegations above

58. Upon information and belief, Defendants contribute to the infringement of the ’997 Patent by offering to sell and selling within the United States the product which infringes the claim of the ’997 Patent, and the product is not a staple article or commodity of commerce suitable for substantial non-infringing use.

59. Upon information and belief, Defendants knowingly or with willful blindness induced and continue to induce infringement and possessed specific intent to encourage another’s infringement by, or were willfully blind as to the ’997 Patent and with respect to, their activities described above.

60. The foregoing acts of patent infringement by the Defendants have caused, and unless enjoined by this Court, will continue to cause, immediate and irreparable injury and damage to the Plaintiff, and Plaintiff has no adequate remedy at law. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants’ wrongful acts in an amount subject to proof at trial.

## APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

61. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs, as if fully restated herein.

62. As set forth above, Defendants’ actions, in violation of the United States patent

law, have caused and are continuing to cause, substantial damages to Plaintiff.

63. Defendants XGIMI and Kickstarter are jointly marketing, offering for sale, selling, and distributing the Accused Products that infringe multiple Plaintiff's patents.

64. The release of these infringing products will cause Plaintiff to lose market share and goodwill for which there is no remedy at law and will cause Plaintiff irreparable harm.

65. XGIMI and Kickstarter have raised over $1.27 million USD from more than 2,670 backers who have committed to purchase the MemoMind Products that infringe Plaintiff's patents through the active Kickstarter campaign. Urgency is needed here because the Kickstarter campaign for MemoMind Products will end on August 27, 2026 and funds will be released to Defendants soon thereafter. Pursuant to Kickstarter's terms of service and/or policies, "If [the] project is successfully funded, the funds pledged will be debited directly from [the] backers' cards. There is a 14 calendar day window following [the] project's deadline where we will be collecting and processing the pledges. After the 14 days have passed, a payout will be initiated. Please note, the payout will begin initiating at the time [the] campaign ended 14 days prior."[22]

66. Defendants' sale and distribution of thousands of infringing MemoMind Products will introduce an infringing low-cost product to enter the market, providing unfair advantages for a company that did not incur the research and development costs necessary to develop their product and instead infringes Plaintiff's patent.

67. Allowing Kickstarter to transfer the funds to XGIMI will directly fund the manufacture, use, importation, offer for sale, and/or sale of low-cost infringing products into the U.S. market, irreversibly harming Plaintiff's market-share and creating cost pressure on Plaintiff

[22] Kickstarter: If my project is successfully funded, how do I receive my funds?, available at https://help.kickstarter.com/hc/en-us/articles/360010120934-If-my-project-is-successfully-funded-how-do-I-receive-my-funds.

that cannot be reversed.

68. As explained more fully in its Memorandum In Support of Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiff requests that this Court grant a temporary restraining order and injunction to restrain Kickstarter from transferring any funds collected from backers during the campaign for MemoMind Products (and/or any payment or transfer of the funds to XGIMI related to the campaign for MemoMind Products) until this Court can reach a determination on the merits of the issues raised in this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests an order and/or judgment against Defendants as follows:

A. That Defendants have infringed and are infringing one or more claims of the Asserted Patents;

B. A temporary restraining order that (1) restrains and enjoins Defendant Kickstarter PBC from transferring, paying, or sending directly or indirectly to XGIMI or to any other third party (beyond Kickstarter PBC's own bank accounts) any funds, payments, money, or items of value received in connection with, from, or relating to its campaign with XGIMI involving the Accused Products, pending a hearing on motion for temporary injunction; (2) requires Defendant Kickstarter PBC to retain and not disburse any and all funds or payments received or collected in connection with its campaign relating to the Accused Products.

C. A preliminary injunction that (1) enjoins Defendant Kickstarter PBC from transferring, paying, or sending directly or indirectly to XGIMI or to any other third party (beyond Kickstarter PBC's own bank accounts) any funds, payments, money, or items of value received in connection with, from, or relating to its campaign with XGIMI involving the Accused Products,

(2) requires Defendant Kickstarter PBC to retain and not disburse any and all funds or payments received or collected in connection with its campaign relating to the Accused Products, until this Court can reach a determination on the merits of the issues raised in this lawsuit; and (3) all Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them, are enjoined from:(a) directly or indirectly infringing the Asserted Patents that is owned or controlled by Plaintiff through the making, using, selling, importation, and/or offering for sale of any infringing smart glasses, including the MemoMind products; and (b) enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing others to directly or indirectly infringe the Asserted Patents to manufacture, import, distribute, advertise, offer for sale, and/or sell infringing smart glasses.

D. A permanent injunction barring Defendants from the manufacture, use, importation, offer for sale, and sale of the Accused Products;

E. Damages awarded to Plaintiff against Defendants under 35 U.S.C. § 284 in an amount sufficient to compensate Plaintiff for its damages arising from infringement by Defendants, including, but not limited to, lost profits and/or a reasonable royalty, together with pre-judgment and post-judgment interest, and costs;

F. Finding that this action is an "exceptional" case within the meaning of 35 U.S.C. § 285 and awarding reasonable attorneys' fees, expenses, costs, or as otherwise permitted by law;

G. Enter judgement that Defendants' infringement was and is willful and that Even Realities's damages assessed under 35 U.S.C. § 284 be trebled;

H. Awarding enhanced damages in an amount to be determined at trial; and

I. Any other relief as this Court or a jury that may deem proper and just under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues triable in this action.

Dated: August 24, 2026

Respectfully submitted,

/s/ Richard F. Martinelli
Wesley L. White
Richard F. Martinelli
John Augelli
Sumaia Tabassum
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000
wwhite@orrick.com
rmartinelli@orrick.com
jaugelli@orrick.com
stabassum@orrick.com

Yufeng (Ethan) Ma
Orrick, Herrington & Sutcliffe LLP
5701 China World Tower A
No. 1 Jianguomenwai Avenue
Beijing, 100004, PRC
Tel: +86 10 8595 5600
Fax: +86 10 8595 5700
yma@orrick.com

*Attorneys for Plaintiff*
*Shenzhen Yiwen Tech Limited*